UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF FLORIDA

YERID BENITO LARIOSA, SILVESTRE
PICADO, and all others similarly situated     CASE NO.: 17-23799-CIV-DLG
under 29 U.S.C. § 216(b)

      Plaintiffs,
v.

C&R PALLETS CORP.,
JUANA C. ESCOTO, and
ROSA C. HERNANDEZ,

      Defendants.
_____/

## DEFENDANTS' MEMORANDUM OF LAW

Defendants C&R PALLETS CORP. ("C&R"), JUANA C. ESCOTO ("Escoto") and ROSA C. HERNANDEZ ("Hernandez") (collectively the "Defendants"), through undersigned counsel, hereby filed this Memorandum of Law as permitted by the Scheduling Order issued by this Court [DE#61], and state the following support thereof:

I.    Introduction.

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201-219, are the federal statutes that set forth basic requirements for time-keeping and overtime payments and prohibit an employer from discharging an employee in retaliation for engaging in a protected activity.

The Plaintiffs both rely upon the FLSA in the causes of action made in their Second Amended Complaint [DE#34] against Defendants C&R Pallets Corp., Juana C. Escoto and Rosa C. Hernandez. Namely, the Plaintiffs claim that the Defendants violated 29 U.S.C. § 207(a)(1) for allegedly failing to pay the Plaintiffs overtime wages and 29 U.S.C. 215(a)(3) for allegedly

discharging the Plaintiffs in retaliation for complaining of overtime wages. *See* Plaintiffs' Second Amended Complaint [DE#34] for more information as to the allegations set forth by the Plaintiffs.

Plaintiffs Silvestre Picado ("Picado") and Yerid Lariosa ("Lariosa") (collectively "Plaintiffs") are both former employees of Defendant C&R Pallets Corp. and were employed as delivery truck drivers for C&R, who would make deliveries of semitrailers containing pallets to C&R's clients in the South Florida area. The Plaintiffs employment duties consisted solely of driving semitrailers to and from C&R's clients to either drop-off or pick-up a semitrailer containing an order of pallets.

Plaintiff Lariosa first filed his original Complaint on October 17, 2017, alleging one count for a federal overtime wage violation against the Defendants. [DE#1]. Then, Plaintiffs filed a First Amended Complaint on November 10, 2017 [DE#16], which added Plaintiff Picado as a named-party and to the overtime wage count, and also added a cause of action for retaliatory discharge of Picado, whom was terminated in October of 2017. Then, Plaintiffs filed a Second Amended Complaint on January 4, 2018 [DE#34], which added a separate retaliatory discharge action for Plaintiff Lariosa after he was terminated from the Company in December of 2018. Plaintiffs also allege that co-defendants Juana C. Escoto and Rosa C. Hernandez are employers under the FLSA and are personally liable to the Plaintiffs for all actions brought under the FLSA. *Id.*

The parties do not dispute that the Plaintiffs were employed by C&R, nor that the Plaintiffs' employment with C&R have since been terminated, respectively. However, it is disputed as to whether the Plaintiffs ever worked overtime hours for C&R and made any complaint to the Defendants for overtime wages throughout their employment with C&R exist. Further, among other disputed facts, Defendants dispute Plaintiffs' retaliatory discharge claims, as the Plaintiffs were each terminated for legitimate business reasons and not for engaging in a protected activity.

Namely, C&R lost its client that provided the workload for Plaintiff Picado's employment, and then Plaintiff Lariosa began to partake in a series of inappropriate and explicit conduct in the course of carrying out his employment duties, such as refusing to sign an employment policy notice and publicly exposing himself and urinating on C&R's delivery truck in front of a client of C&R.

As such, the Defendants have denied Plaintiffs' allegations and raised several affirmative defenses to the claims made against them, as stated in their Answer and Affirmative Defenses to the Plaintiffs' Second Amended Complaint [DE#38] (Defendants' "Answer and Affirmative Defenses"). These affirmative defenses include, but are not limited to, defenses such as proper termination, no motivating factor, no personal liability, good faith under the FLSA, failure to notify employer, and that the Plaintiffs' were terminated for legitimate, non-discriminatory business reasons, among other affirmative defenses. *See* Defendants' Answer and Affirmative Defenses [DE#38] for more information as to the affirmative defenses asserted by the Defendants.

The Plaintiffs have filed a statement of claim alleging the amount of overtime hours worked during their employment with C&R. [DE#48]. In Plaintiffs' Amended Statement of Claim, Plaintiff Lariosa claims to have worked an uncompensated 25 hours of overtime every single week for thirty-eight straight weeks. *Id*. Plaintiff Picado claims to have worked an uncompensated 20 hours of overtime every single week for twenty-eight straight weeks.

The only evidence set forth by the Plaintiffs in support of their claims are their respective testimonies, which are contradicted by testimony of witnesses deposed in this case and evidence presented.

This memorandum of law is intended to provide a briefing on relevant issues of law as they relate to the allegations made against the Defendants, and the affirmative defenses asserted by the Defendants in response to said-allegations. This memorandum of law covers the elements required

to set forth a prima facie case for both an unpaid overtime wage claim and a retaliatory discharge claim under the FLSA, as well as certain defenses as they relate to this case. This memorandum of law also covers the topic of personal liability as an employer under the FLSA.

II.  FLSA Time Reporting and Overtime Payment Requirements.

29 U.S.C. § 206(a)(1)(C) is the portion of the FLSA that requires employers to pay employees no less than the federal minimum wage, which is currently $7.25 per hour for the hours worked in any workweek. Under 29 U.S.C. § 207 (a)(1) employers are required to pay an overtime rate to non-exempt employees that work over forty (40) hours in any workweek. The section states:

"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

In order to support a claim for uncompensated overtime work hours under the FLSA, an employee must prove that: (1) he worked overtime hours without compensation, and (2) that the employer had knowledge, or should have had knowledge, of the employee's overtime work. *Gaylord v. Miami-Dade County*, 78 F.Supp.2d 1320, 1325 (S.D.Fla. 1999). If an employee successfully sets for "sufficient evidence to show as a matter of just and reasonable interference that he was improperly compensated," the burden of proof shifts to the employer to demonstrate that the employee did not perform overtime work. *Id*.

However, even if an employee is found to be owed overtime wages, such employees are typically only entitled to recover up to two years of back pay under the FLSA's statute of limitations. *Rodriguez v. Farm Stores Grocery Inc.*, 518 F.3d 1259, 1262 (11th Cir. 2008) (*citing to* 29 U.S.C. § 255(a)). If an employer's violation of the FLSA was willful, then the employee may be entitled to one additional year of back pay. *Id.* To prove that a "violation of the FLSA was

willful in order to extent the limitations period, the employee must prove by a preponderance of the evidence that [her] employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Gilbert v. City of Miami Gardens*, 625 Fed.Appx. 370, 372 (11th Cir. 2015) (*quoting Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162-63 (11th Cir. 2008). In the context of an FLSA violation, courts have defined reckless disregard as the "failure to make adequate inquiry into whether conduct is in compliance with the Act." *Id*.

When an employer has no knowledge of work that is alleged as uncompensated overtime courts are reluctant to impose liability against the employer. *Gaylord v. Miami-Dade County*, (*citing to Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972). In *Gaylord*, the court acknowledged that, even if the employee worked uncompensated overtime hours, his action failed because he could not prove that his employer knew or should have known about his unreported overtime hours. The employee failed to show that his employer knew of the additional work, and the employee testified that a majority of the alleged work took place outside of his employer's place of business. *Id.* Because the employee's supervisors would have had no independent way of knowing how the employee spent his time, and the employee's time sheets failed to show any overtime hours worked, the court found that there was no reason for his supervisors to believe the employee was working the claimed -overtime hours and denied the employee's claims for wages associated with the alleged-overtime. *Id.*

Here, it is disputed whether the Plaintiffs worked any overtime hours for C&R. While the Plaintiffs allege they worked a certain amount of hours, there is no evidence that corroborates or otherwise supports the Plaintiffs claims. No witness other than Plaintiffs, including the C&R employees who were employed during the Plaintiffs' employment, testified to the Plaintiffs

working in excess of forty (40) hours in any week, and the limited time cards available show that Plaintiff Lariosa never worked more than forty (40) hours in any week that was reported. Further, the work supposedly performed by Plaintiffs giving rise to their overtime hours was physical labor, performed outside of C&R's place of business, and performed without C&R's knowledge, direction, and consent.

    a. <u>Asserted Defenses.</u>

A set-off is a permissible defense when the set-off "will not cause a plaintiff's wages to dip below the statutory minimum." *King v. ITT Educational Services, Inc.*, 2009 WL 3583881, at 3 (M.D.Fla. 2009). However, if a set-off would cause the plaintiff's wages to fall below the statutory minimum, a court may reject a set-off against any back pay awarded to a plaintiff. *Id.*

Several courts within the Eleventh Judicial circuit have found that there is no requirement for a plaintiff to mitigate overtime wages under the FLSA nor provide notice of hours allegedly worked. *Id.*; *See also Gonzalez v. Spears Holdings, Inc.*, 2009 WL 2391233, at 3 (S.D.Fla. 2009) (holding that "[b]ecause there is no duty to mitigate damages, nor, as addressed above, a duty to provide notice, the Court will strike Defendants' Fifth Affirmative Defense [duty to mitigate damages and provide notice to Defendant of hours allegedly worked.]."); *Perez-Nunez v. North Broward Hosp. Dist.*, 2009 Dist. LEXIS 25557, 2009 WL 723873 (S.D.Fla. 2009) (holding a duty to mitigate damages fails as a matter of law after the Plaintiff failed to timely disclose any alleged violation to her employer so that her employment terms could be corrected.).

The doctrines of estoppel, waiver, and accord and satisfaction are generally inapplicable to FLSA cases, however, there are limited exceptions in which those doctrines may be applied as a defense. *Hansen v. ABC Liquors, Inc.*, 2009 WL 3790447, at 4 (M.D.Fla. 2009); *Gonzalez v. Spears Holdings, Inc.*, 2009 WL 2391233, at 3 (S.D.Fla. 2009). Estoppel is permitted as a valid

defense to an FLSA claim where the party asserting estoppel is disputes the amount it has already paid to the plaintiff-employee and asserts to estop plaintiff from seeking amounts already received. *Id.* (*citing to Tyler v. Westway Auto. Serv. Ctr., Inc.*, Case No. 0:02-vc-61667-WPD, DE 69).

The doctrine of waiver is permitted as a valid defense to an FLSA claim under two limited exceptions: (1) when an employee accepts full payment of unpaid wages, as supervised by the Secretary of Labor; and (2) when an employee accepts payment under a court-approved settlement. *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F.Supp.2d 1314, 1320 (S.D.Fla. 2005).

The doctrine of laches is generally inapplicable to FLSA claims because of FLSA provides for a statute of limitations of within two years of the alleged FLSA violations. *Morrison*, at 1320.

The doctrine of unclean hands is typically inapplicable to FLSA overtime wage cases, but courts are permitted to apply the doctrine to "take into account the Plaintiff's alleged misconduct when analyzing remedies." *McGlothan v. Walmart Stores, Inc.*, 2006 WL 1679592 (M.D.Fla. 2006).

   III.   Retaliation.

Under 29 U.S.C. § 215(a)(3), it is unlawful "for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding."

An employee must demonstrate the following elements to set forth a prima facie case of retaliation under 29 U.S.C. § 215(a)(3): (1) that the employee engaged in an activity protected under the act, (2) the employee subsequently suffered adverse action by the employer, and (3) a causal connection existed between the employee's activity and the adverse action. *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000).

The United States Supreme Court has found that a "filing" under the FLSA covers informal oral complaints as well as written complaints as a protected activity under the act. *Katsen v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011). However, the Southern District of Florida has consistently required, in order to be protected under the anti-retaliation provision of the FLSA, that the employee assert his or her FLSA rights prior to being terminated. *See Ash v. Sambodromo, LLC*, 676 F.Supp.2d 1360 (S.D.Fla. 2009) (holding that the plaintiff did not present evidence that she asserted her FLSA rights to her employer and therefore failed to make a prima facie case of retaliation under the FLSA); *Alvarado v. I.G.W.T. Delivery Systems, Inc.*, 410 F.Supp.2d 1272, 1278-79 (S.D.Fla. 2006) (finding that the employee's alleged complaint is not protected because it makes no specific mention of overtime pay or invokes the FLSA); *Etienne v. Muvico Theaters Inc.*, 2003 WL 21184268 (S.D.Fla. 2003) (finding that plaintiff's complaint fail as a protected activity under the FLSA because plaintiff presented no evidence "that he threatened to report labor-law violations, or file a complaint about business practices" against the defendant-employer).

The plaintiff's burden of proof under the first element of a retaliatory action has "both a subjective and an objective component. A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable considering the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Burnette v. Northside Hosp.*, 342 F.Supp.2d 1128, 1134 (N.D. Ga. 2004) (*quoting Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).

After meeting the first element, the employee must then prove that he or she suffered adverse action by the employer subsequent to engaging in the protected activity. *Wolf*. The United States Supreme Court in *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006), has interpreted antiretaliation to cover "those employer actions that would have been materially adverse to a reasonable employee or applicant." The Court in *Burlington* specifically referred to a "*material* adversity to separate significant from trivial harms." *Id.*

Further, even if the employee can demonstrate that it engaged in a protected activity, he or she must be able to prove a causal connection between the activity and their discharge. *Alvarado v. I.G.W.T. Delivery Systems, Inc.*, 410 F.Supp.2d 1272, 1278-79 (S.D.Fla. 2006) (holding that "the plaintiff must prove that the adverse action would not have been taken "but for" the assertion of FLSA rights.).

However, if the employer terminated the employee for a legitimate reason, the third element of a retaliatory action under 29 U.S.C. § 215(a)(3) cannot be supported. *Id.*; *See also Wolf v. Coca-Cola Co.* In *Wolf*, the court found that the plaintiff-employee could establish the causation element because the termination was for a "legitimate reason" related to the employee's work performance. *Wolf* at 1343. While the employee alleged that the reason was pretext for terminating her for asserting her FLSA rights, she was unable to provide sufficient evidence to demonstrate any pretextual behavior and thus could not defeat the employer's defense. *Id.*

Here, it is disputed whether the Plaintiffs engaged in an activity protected under the FLSA, which Plaintiffs allege as complaining of unpaid overtime wages. Plaintiffs allege that they made this complaint to the "Defendants" yet are only able to specifically name a supervisor that they spoke to about the alleged complaint, Pedro Ruiz. However, neither Pedro nor any other witness in this case has testified to the Plaintiffs' alleged complaints, and Pedro has denied that the

Plaintiffs ever made a complaint of unpaid overtime wages to him, contrary to Plaintiffs allegations. Further, Plaintiffs have admitted in testimony that they did not make any complaints to Escoto or Hernandez.

Further, both Plaintiffs Picado and Lariosa were each terminated for a legitimate reason and were provided an accompanying termination letter notifying them of their discharge. Plaintiff Picado was terminated after C&R lost a client of theirs and did not have a workload to support Picado's employment. Plaintiff Lariosa refused to acknowledge a change in C&R's employment policy, abandoned his work position without notice to his employer, and publicly exposed himself and urinated on C&R's delivery truck in front of a client of C&R during a delivery. As such, it is clear that the third element of a retaliatory action cannot be supported against the Defendants.

  a. Front Pay.

As part of the damages sought in their retaliatory action, Plaintiffs have requested front pay until they reach respectively reach the age of 65.[1] Front pay is an available form of damages to a plaintiff that prevails on a retaliation claim under 29 U.S.C. § 216(b). However, courts have a broad discretion to award front pay and should award front pay only "as necessary to "effectuate the purposes" of 29 U.S.C. § 215(a)(3)." *Leon v. M.I. Quality Lawn Maintenance, Inc.*, 2013 WL 773475, at 10 (S.D.Fla. 2013) (*quoting Moore v. Appliance Direct*, 708 F.3d 1233, at 6, 8 (11th Cir. 2013)). This Court, in *Leon*, defined front pay as "the difference (after proper discounting to present value) between what the plaintiff would have earned in the future had he been reinstated at the time of trial and what he would have earned in the future at his next best employment." *Id.* (*quoting Avita v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir. 1995)). The court stated that the "purpose of an award of front pay is to put a plaintiff "in the identical financial

---

[1] It is worth noting that Plaintiff Picado testified that he was 66 years old when he began working for C&R Pallets Corp., and was 67 years old at the time of his deposition on May 8, 2018.

position that he would have occupied had he been reinstated," in situations when reinstatement is not feasible." *Id.* (*quoting Avita*).

Courts are instructed to be cautious with awarding front pay when liquidated damages are also sought because of the possibility that the award might result in overcompensation. *Id.* If an employee prevails under a retaliatory claim under 29 U.S.C. § 216(b), receives liquidated damages, and presents no evidence that an award of front pay is appropriate or would otherwise effectuate the purposes of 29 U.S.C. § 215(a)(3), no award of front pay can be issued. *Miller v. Paradise of Port Richey, Inc.*, 75 F.Supp.2d 1342, 1346-47 (M.D.Fla. 1999).

However, in the event front pay is awarded, courts are to consider several factors in the award, "including the length of time the plaintiff expected to work for the defendant and the applicable discount rate" and other factors, such as "other reasonable employment opportunities, a reasonable time to find such other employment, the nature of the work (and plaintiff's ability to perform physically), and any separate award of liquidated damages." *Id.* (*citing to Warren v. County Comm'n of Lawrence County, Ala.*, 826 F.Supp.2d 1299, 1311-12 (N.D.Ala.2011). A basic method to determine front pay, as set forth by the *Warren* court and endorsed by the Southern District of Florida in *Leon* is "the difference between what an employee would have made from the former employer, versus what the employee could expect to make from a new employer." *Id*.

Here, an award of front pay would be an abuse of the court's power under the FLSA and would result in the overcompensation of the Plaintiffs. The Plaintiffs have already secured employment since their termination from C&R, which compensate the Plaintiffs at a similar or higher rate than their compensation from C&R. Further, the factors cited by the Court in *Miller* do not support an award of front pay, and would severely limit any award in the event front pay is awarded. *Miller*, at 1346-67.

      b.   <u>Punitive and Compensatory Damages.</u>

The FLSA provides for criminal penalties in order to cover the field of punitive sanctions that would otherwise be issued under the FLSA. *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 939 (11th Cir. 2000). As such, punitive damages are rarely awarded to employees that prevail on a retaliatory claim, and will not be awarded unless it is found that the employer's wrongful act was willful and/or intentional as opposed to merely negligent. *Id*. at 936.

In *Snapp*, an employee pled for compensatory and punitive damages for his alleged retaliatory claim that included damages for pain and suffering as part of his compensatory damages. *Id*. at 930. The *Snapp* Court limited all compensatory damages to the relief provided in section 29 U.S.C. § 216(b), as it reiterated that the section itself is compensatory in nature and was intended "to *compensate* the plaintiff" and "put the plaintiff in the place she would have been absent the employer's misconduct." *Id*. at 934. As such, any damages outside of those allowed under 29 U.S.C. § 216(b), including the pain and suffering damages, were not awarded. *Id.* at 937. Just as the 11th Circuit upheld in *Snapp*, no damages outside of those allowed under 29 U.S.C. § 216(b) should be awarded to the Plaintiffs, including, but not limited to damages for pain and suffering.

    IV.   <u>Personal Liability for Employers under the FLSA.</u>

Plaintiffs allege personal liability against Escoto and Hernandez for their FLSA claims. *See* DE#34. Escoto and Hernandez both asserted affirmative defenses seeking to dismiss the personal liability aspect of the Plaintiff's FLSA claims as neither Escoto and Hernandez were employers under the FLSA, and that Escoto and Hernandez were operating in good faith under 29 U.S.C. § 260, among other defenses.

Only employers, as defined by the FLSA itself, can be liable to a plaintiff under an FLSA cause of action. 29 U.S.C. § 203(d) defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." However, to determine whether an individual is an employer under the FLSA and personally liable for an FLSA violation, courts examine the "economic reality" of the relationship between the parties. *Villareal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).

An analysis commonly employed to examine the "economic reality" of the parties' relationship is the economic reality test. *Id*. The economic reality test is composed of four factors, which measure whether the individual: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Id.* (citing to *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).

Further, the Eleventh Circuit has held that, in order to hold an individual personally liable, the individual "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986). In *Patel*, the defendant was both the president and vice-president of a corporation, and a director and the principal stock holder of the corporation, but was found not to be an employer for FLSA purposes because he lacked "operational control of significant aspects of the corporation's day-to-day functions. *Id.* Despite this individual's high-ranking titles and ownership of the corporation, the *Patel* court found it necessary to look past these aspects and into the realities of an individual's relationship with an employer in order to truly analyze the economic reality of the relationship between the plaintiff-employee and the defendant-individual.

In recent years, following *Patel*, the Eleventh Circuit has reiterated this standard, and instructed courts to analyze the circumstances of the whole activity rather than "technical or isolated factors" and the role that the individual actual had in the corporation. *Alvarez-Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008). These principles led the *Alvarez-Perez* court to ultimately determine that individual officer and majority shareholder of the Defendant-corporations was not an employer for FLSA purposes. *Id*.

However, even if found to be an employer for FLSA purposes, an individual will not be personally liable to the Plaintiff-employees "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260; *See also*, *Fuentes v. CAI Intern., Inc.*, 728 F.Supp.2d 1347, 1356 (S.D.Fla. 2010) (*quoting Spires v. Ben Hill County*, 980 F.2d 683, 689 (11th Cir. 1993).

As such, there is no basis to assess individual liability against Defendants Escoto and Hernandez. Escoto and Hernandez both lack the operation control that is typically required to assess personal liability against an individual, as said-defendants did not hire the Plaintiffs nor schedule the Plaintiffs for work, let alone communicate with the Plaintiffs at work. Both Plaintiffs have testified that all of their directions came from their supervisor, Pedro Ruiz, including but not limited to their work schedules, their amount of hours they worked, and their employment duties. Further the Plaintiffs both testified that they never interacted nor communicated with Escoto and/or Hernandez, and were unaware as to their role at C&R.

[Certificate of Service on Next Page]

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served upon all CM/ECF recipients via E-Filing on this 18th day of June 2018.

> THE CAMPBELL LAW GROUP, P.A.
> Attorneys for Defendants
> 2000 Ponce De Leon Blvd., Sixth Floor
> Coral Gables, Florida 33134
> T: (305) 328-9506
> F: (305) 675-3973
> By: /s/ Regina M. Campbell
> Regina M. Campbell, Esq.
> Florida Bar No. 74842
> Nicholas G. Neville
> Florida Bar No. 123893
> service@thecampbelllawgroup.com